## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**DEANNA L. PUSKAS,**

                 **Plaintiff,**          **:**

      **v.**

**DELAWARE COUNTY,**
**OHIO,** *et al.,*             **:**

           **Defendants.**

**Case No. 2:19-cv-2385**
**Judge Sarah D. Morrison**
**Chief Magistrate Judge Elizabeth**
**P. Deavers**

## OPINION AND ORDER

Plaintiff Deanna Puskas brings this action as Administrator of the estate of her late-husband, Brian Puskas, against Delaware County, Ohio (the "County") and four Delaware County Sheriff's Deputies, Deputies Zachary Swick and Troy Gibson, Sergeant Robert Spring, and Lieutenant Robert Buttler (the "Deputies"). (*See* Am. Compl., ¶¶ 3–9, ECF No. 64.) Mrs. Puskas's Amended Complaint asserts three claims stemming from the shooting death of Mr. Puskas: constitutional violation claims based on the Fourth and Fourteenth Amendments and brought under 42 U.S.C. § 1983; a wrongful death claim under Ohio Rev. Code § 2125.02; and a common law tort claim for intentional infliction of emotional distress. (*See* Am. Compl., *generally*.) This matter is before the Court on Defendants' Partial Motion to Dismiss the Amended Complaint. (Mot. to Dismiss, ECF No. 69.) Mrs. Puskas responded (Resp. in Opp'n, ECF No. 71), and Defendants have filed their reply

(Reply, ECF No. 72). For the reasons set forth below, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.     BACKGROUND

All well-pled factual allegations in the Amended Complaint (Am. Compl., ECF No. 64) are considered as true for purposes of the Motion to Dismiss. *See Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016). The following summary draws from the allegations in the Amended Complaint.[1]

In early June 2018, a Delaware County Sheriff's Office ("DCSO") Deputy stopped Brian Puskas for speeding. (Am. Compl., ¶ 10.) Mr. Puskas was only given a warning, but the Deputy followed Mr. Puskas to the home he shared with Deanna in Kilbourne, Ohio. (*Id.*) Mr. Puskas informed his wife that the officer followed him out of "concern[] for his erratic behavior." (*Id.*) To that point, Mr. Puskas had experienced good mental health. (*Id.*, ¶ 11.) However, on June 6, 2018, a coworker also became concerned with Mr. Puskas's behavior and followed him home from his job as a third-shift airplane mechanic. (*Id.*, ¶ 12.) When Mr. Puskas arrived home that morning, he behaved erratically and "began throwing personal belongings out

---

[1] Mrs. Puskas's Response includes a substantial number of supposed facts that are not alleged in the Amended Complaint. The Court cannot consider them. *Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir. 2001) ("The district court, in reviewing a motion to dismiss, may not consider matters beyond the complaint.") (citation omitted). Nor will it permit Mrs. Puskas to amend the pleadings through her Response. *See Guy v. Bd. of Educ. Rock Hill Local Sch. Dist.*, No. 1:18-CV-893, 2021 WL 1140224, at *3 (S.D. Ohio Mar. 25, 2021) (Bowman, J.) ("Plaintiff may not amend her complaint by submitting additional allegations in response to a 12(b)(6) motion to dismiss.") (citing *Roulhac v. Sw. Reg'l Transit Auth.*, No. 1:07cv408, 2008 WL 920354, at *4 (S.D. Ohio Mar. 31, 2008) (Dlott, J.)). Accordingly, the Court's review is strictly limited to the factual allegations set forth in the Amended Complaint.

the window and yelling and screaming at Deanna." (*Id.*, ¶ 13.) Mrs. Puskas dialed 9-1-1 for help. (*Id.*) She advised the dispatcher that there were guns in the home. (*Id.*)

Law enforcement officers arrived to the scene, and "guns were drawn as officers exited their vehicles." (*Id.*, ¶ 14.) Officers ordered Mr. Puskas to put his hands up. (*Id.*) He complied, but continued "walking erratically about the yard." (*Id.*) Mr. Puskas then took off his shirt and threw it to the ground. (*Id.*) Deputy Gibson then deployed a DCSO K-9 unit named Cash. (*Id.*) Cash first pursued Mr. Puskas, but then diverted attention to the shirt. (*Id.*) Mr. Puskas ran from Cash and picked up a soft-gun case that had been on the ground behind a tree. (*Id.*) As Mr. Puskas attempted to unzip the case, Deputies Spring, Gibson, and Swick fired their weapons and shot Mr. Puskas dead. (Id., ¶¶ 14–15.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a

> defendant's liability, it stops short of the line between possibility and
> plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Directv, Inc. v. Treesh*, 487 F.3d, 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## III.  ANALYSIS

The Court first notes that several of the defendants named in the Amended Complaint are not the true parties in interest. It is well-established that "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). *See also Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As a result, each of Mrs. Puskas's claims brought against the Deputies in their official capacities will be considered as claims against the County.

Defendants now move for the dismissal of all claims against Lt. Buttler, and for dismissal of the claims against the County premised on (i) the DCSO Lethal Force Policy and Canine Policy, and (ii) the alleged failure to train or supervise the K-9 units. (*See* Mot. to Dismiss, *generally*.)

4

A.      **Claims against Lieutenant Buttler**

1.      **Mrs. Puskas's § 1983 Claims are dismissed as time-barred.**

Defendants offer several reasons why the § 1983 claims against Lt. Buttler should be dismissed, including that the statute of limitations has run, that Mrs. Puskas has failed to state a claim against him, and that he holds qualified immunity against the claims. (*Id*.) Because the Court finds that Mrs. Puskas's § 1983 claims against Lt. Buttler are time-barred, it need not and does not address the alternative theories.

Section 1983 claims arising in Ohio are subject to a two-year statute of limitations. *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (citing Ohio Rev. Code § 2305.10). The events giving rise to this action took place on June 6, 2018; accordingly, the statute of limitations ran on June 6, 2020. Although Mrs. Puskas filed her original Complaint within the limitations period (*see* ECF No. 1), she did not name Lt. Buttler as a defendant until filing her Amended Complaint, after the limitations period closed (*see* ECF Nos. 34, 64). Mrs. Puskas argues that the Amended Complaint relates back to the filing of the original Complaint. Defendants argue otherwise. Under clear Sixth Circuit precedent, Defendants are correct.

Federal Rule of Civil Procedure 15(c)(1) governs the relation back of amended pleadings:

> An amendment to a pleading relates back to the date of the original pleading when:
>
> (A)   the law that provides the applicable statute of limitations allows relation back;

(B)  the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C)  the amendment changes the party or the naming of the party against whom a claim is asserted, if [subsection (B)] is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

  (i)  received such notice of the action that it will not be prejudiced in defending on the merits; and

  (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

As to the Amended Complaint's claims against Lt. Buttler, subsection (C) applies.

See *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010) (explaining that changes to *claims or defenses* are analyzed under Rule 15(c)(1)(B), but changes to the *parties* are analyzed under Rule 15(c)(1)(C)). This Court explained the law applicable to Rule 15(c)(1)(C), with great detail, in *DeBois v. Pickoff*:

> [C]ourts in this circuit have allowed relation back where a new party is *substituted* for an old one, but have consistently held that when "[t]he effect of Plaintiff's amendment is to *add* another party[,]" it "establishes a new and independent cause of action which cannot be maintained when the statute has run, for the amendment is one of substance rather than one of form and brings into being one not presently in court." *United States ex rel. Statham Instruments, Inc. v. Western Cas. & Surety Co.*, 359 F.2d 521, 523 (6th Cir. 1966) (emphasis added). Accord *In re Kent Holland Die Casting & Plating, Inc.*, 928 F.2d 1448, 1450 (6th Cir. 1991); *Smart v. Ellis Trucking Co.*, 580 F.2d 215, 218 (6th Cir. 1978); *Marlowe v. Fisher Body*, 489 F.2d 1057, 1064 (6th Cir. 1973). This line of cases was reaffirmed . . . , as the Sixth Circuit stated in [*Asher* 596 F.3d at 318] that "the type of 'changes' permitted [by Rule 15(c)] are limited to corrections of misnomers or misdescriptions" and "the precedent of this circuit clearly holds that 'an amendment which adds a new party creates a new cause of action and there is no relation back to

6

the original filing for purposes of limitations.'" (quoting *In re Kent Holland Die Casting & Plating, Inc.*) (extending Sixth Circuit holdings that defendants cannot be added to a suit after the limitations period has expired to also bar the addition of new plaintiffs after the statute has run). This reading of Rule 15(c) has been criticized by some courts as overly technical, or even inconsistent with the plain language of the Rule itself. *See In re Greater Southeast Community Hospital Corp. I*, 341 B.R. 91, 99 n. 7 (Bankr. D.D.C. 2006). Nevertheless, the Sixth Circuit's construction, reflected in *Asher* and similar cases, has consistently been that a Rule 15(c) "change" in parties requires a one-for-one substitution, and that the addition of new parties alongside those that are already part of the action precludes relation back to the original complaint.

No. 3:09cv230, 2011 WL 1233665, at *10 (S.D. Ohio, Mar. 28, 2011) (Rice, J.).

Here, the Amended Complaint does not substitute Lt. Buttler for any original defendant, nor does the record indicate that Mrs. Puskas failed to name him in the original Complaint by dint of mistake as to his identity. Although Mrs. Puskas may have been unaware of Lt. Buttler's supervisory authority over the DSCO K-9 program, her failure to earlier discover that fact—whether by her own fault or the Defendants'[2]— does not justify the assertion of claims against Lt. Buttler after the limitations period closed.

Mrs. Puskas argues in favor of a contrary ruling by emphasizing the close relationship between Lt. Buttler and the original Defendants, including his employer and direct reports. She argues, citing to *Krupski v. Costa Crociere S.p.A.*,

---

[2] Mrs. Puskas argues in passing that Defendants improperly failed to disclose Lt. Buttler's role in the K-9 unit. (Resp. in Opp'n, 11.) It is true, "a defendant's refusal to provide information to the plaintiff may form the basis of an equitable-tolling argument. . . ." *Rayfield v. City of Grand Rapids*, 768 F. App'x 495, 502–03 (6th Cir. 2019) (citation and quotation omitted). However, Mrs. Puskas does not argue for equitable tolling of the limitations period; she argues only that her claims against Lt. Buttler relate back to the original Complaint. And a defendant's refusal to provide information to the plaintiff "does not constitute a 'mistake' under Rule 15(c)." *Id.*

560 U.S. 538 (2010), that these close ties ensured that Lt. Buttler received notice of the suit, as required by Rule 15(c)(1)(C). *Krupski* indeed supports the notion that a close relationship between a mistakenly-named defendant and the correct defendant may justify relation back when the correct defendant is ultimately named. *See id.*, 560 U.S. at 554–55. Nonetheless, her argument fails. The facts here are entirely different. Lt. Buttler was not named to replace another officer, mistakenly named as a defendant in the original Complaint. Instead, Lt. Buttler was tacked on to the list of original defendants, and the Amended Complaint's allegations against him constitute *new* claims.

Accordingly, Defendants' motion to dismiss the § 1983 claims against Lt. Buttler is **GRANTED**.

### 2. Lieutenant Buttler is Immune from State Law Claims

Defendants also argue for dismissal of the state law claims against Lt. Buttler. Specifically, they argue that Lt. Buttler enjoys blanket immunity from those claims under Ohio's Political Subdivision Tort Liability Act, Ohio Rev. Code § 2744.01, *et seq.*[3] (Mot. to Dismiss, 8.) The law provides, in relevant part, that an employee of a political subdivision

> is immune from liability [to recover for tort claims] unless one of the following applies:
>
> (a)    The employee's acts or omissions were manifestly outside the

---

[3] Although Defendants appear to assert that Mrs. Puskas's state law claims against Lt. Buttler also fail due to the statute of limitations and a failure to state a claim, they do not develop those arguments in their briefing. The only developed argument for dismissing the state law claims is statutory immunity, discussed in Section III.A.2., *infra*.

scope of the employee's employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; [or]

(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. . . .

Ohio Rev. Code § 2744.03(A)(6).

Defendants argue that the limited allegations specific to Lt. Buttler do not reflect acts or omissions manifestly outside the scope of his responsibilities, or that he acted with malicious purpose, in bad faith, or in a wanton or reckless manner. In her Response, Mrs. Puskas argues that the Political Subdivision Tort Liability Act does not apply because her "claims are filed under both the constitution and U.S. statutes." (Resp. in Opp'n, 18 (citing Ohio Rev. Code § 2744.09(E)).) She cites no authority for the proposition that Ohio's statutory immunity cannot defeat state law claims in a complaint that also asserts federal claims, nor can the Court find any reason to adopt that position.

Mrs. Puskas appears to argue, in the alternative, that Lt. Buttler's failure to supervise the K-9 units' training was reckless. (*Id.*) On this point, the Amended Complaint states only that Lt. Buttler was "[t]he direct supervisor of the three Delaware County K-9 units" at the time of Mr. Puskas's shooting, and that he "did not participate in or supervise any maintenance training of the dogs in the units." (Am. Compl., ¶ 12.) In her Response, Mrs. Puskas proclaims—without discussion, analysis, or citation to supporting authority—that this constitutes "reckless" conduct. "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable

under the circumstances and is substantially greater than negligent conduct." *Shoup v. Doyle*, 974 F. Supp. 2d 1058, 1090 (S.D. Ohio 2013) (Rice, J.) (quoting *Anderson v. City of Massillon*, 983 N.E.2d 266, 267 (Ohio 2010)). The allegations against Lt. Buttler, taken as true and making all reasonable inferences in Mrs. Puskas's favor, simply do not rise to the level of recklessness.

With no reason to conclude that Ohio Rev. Code § 2744.03(A)(6) does not shield Lt. Buttler from Mrs. Puskas's state law claims, Defendants' motion to dismiss those claims is **GRANTED**.

## B. Claims against the County

Defendants also move to dismiss Mrs. Puskas's § 1983 claim against the County, to the extent it is based on its policies or customs regarding K-9 units and an alleged failure to train or supervise those K-9 units. (Mot. to Dismiss, 9.) Section 1983 does not "incorporate doctrines of vicarious liability." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). Accordingly, "[a] plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). The plaintiff must show that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Wright v. City of Euclid, Ohio*, 962 F.3d 852, 879–80 (6th Cir. 2020) (quoting *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013)). That may be proved by four methods: "(1) the existence of an illegal official policy . . . ; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or

(4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess*, 735 F.3d at 478 (citation omitted). The theories presently at issue invoke the first and third methods.

**1. The Amended Complaint sufficiently pleads municipal liability based on a County policy.**

The Amended Complaint alleges that deficiencies in the County's Lethal Force Policy and Canine Policy were the moving force behind the injury to Mr. Puskas. (*See, e.g.*, Am. Compl., ¶¶ 12, 14, 15.) "A plaintiff asserting a section 1983 claim on the basis of a municipal custom or policy must 'identify the policy, connect the policy to the [County] itself and show that the particular injury was incurred because of the execution of that policy.'" *Graham v. Cty. of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) (quoting *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993), *cert. denied*, 510 U.S. 1177 (1994)). "There must be a direct causal link between the policy and the alleged constitutional violation." *Id.* (internal quotation and citation omitted). Defendants argue that the Amended Complaint fails on this point, as it does not "include any allegations that connect Mr. Puskas' death to the execution of the canine policy or less lethal force policy." (Mot. to Dismiss, 10.) The Court disagrees.

The Amended Complaint identifies the Lethal Force Policy and the Canine Policy and connects them to the County. (Am. Compl., ¶¶ 14, 15.) It also alleges facts giving rise to a reasonable inference that Mr. Puskas' shooting death was directly caused by use of a K-9 unit in accordance with a deficient County policy. In particular, the Amended Complaint alleges that Mr. Puskas was behaving

11

erratically, but was not carrying a firearm. It was only after Deputy Gibson deployed Cash that Mr. Puskas attempted to pick up his gun, and it is reasonable to infer that his attempt was to defend against the dog. The Amended Complaint alleges that K-9 units are not covered under the Lethal Force Policy. (*Id.*, ¶ 15.) It further alleges that the Canine Policy does not provide adequate guidelines for the responsible deployment of K-9 units—including whether the K-9 unit must undergo maintenance trainings, whether warnings must or should be given, or in what circumstances a K-9 handler should exercise his discretion to deploy. (*Id.*, ¶¶ 12, 14.) These factual allegations are sufficient to survive a motion to dismiss § 1983 claims against the County.

> ### 2. The Amended Complaint fails to state a claim based on failure to train or supervise.

The Amended Complaint further alleges that the County failed to train or supervise the DCSO K-9 units. (*See, e.g.*, Am Compl., ¶¶ 13, 19.) The Supreme Court has determined that "there are limited circumstances in which an allegation of a 'failure to train' [police officers] can be the basis for liability under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). Those circumstances arise "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 389. The Sixth Circuit instructs that a failure to train or supervise requires a showing that

> (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury.

12

*Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citation omitted). The Amended Complaint fails on both the first and second elements.

As to the first, the Amended Complaint fails to adequately allege that the County's K-9 unit training was inadequate for the tasks performed. The Amended Complaint asserts a number of legal conclusions as to the inadequacy of the training provided by the County. (*See, e.g.*, Am. Compl, ¶ 19.) But it fails to allege any facts going to the substance on which the K-9 unit supposedly went un-trained, *see Connick v. Thompson*, 563 U.S. 51, 68 (2011), or from which one could conceive a plausible claim that the training was inadequate, *see Birgs v. City of Memphis*, 686 F. Supp. 2d 776, 780–81 (W.D. Tenn. 2010) (granting municipality's motion to dismiss failure-to-train claim when allegations in the complaint were no more than a recitation of the elements of the claim). Legal conclusions alone will not suffice.

The Amended Complaint also fails to allege the County's deliberate indifference. "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Miller v. Calhoun Cty.*, 408 F.3d 803, 814 (6th Cir. 2005) (quoting *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997)). A plaintiff most often shows deliberate indifference by identifying "[a] pattern of similar constitutional violation by untrained employees." *Connick*, 563 U.S. at 62 (citing *Bryan Cty.*, 520 U.S. at 409)). However, where, "in light of the duties assigned to specific officers[,] . . . the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the

[municipality] can reasonably be said to have been deliberately indifferent to the need," a single instance of injury may suffice. *City of Canton*, 489 U.S. at 390, 390 n. 10. Mrs. Puskas does not identify any other instance in which a Delaware County K-9 unit has caused injury. Even accepting that a failure to train police officers provided with canines on their proper use falls within the "narrow range of circumstances" in which the County "could be liable under § 1983 without proof of a pre-existing pattern of violations," *Connick*, 563 U.S. at 63–64 (citing *City of Canton*, 489 U.S. at 390 n. 10; *Bryan Cty.*, 409), the Amended Complaint falls short. This is not a circumstance in which it is alleged that a municipality has provided no training whatsoever. The Amended Complaint acknowledges that there was some training. (*See* Am. Compl., ¶ 12.) It does not, however, allege how or why the training program in place is so deficient as to reflect a deliberate indifference on the part of the County. Mrs. Puskas's assertion that the County did not assign a dedicated trainer is insufficient to float her claim above the level of sheer possibility and into the realm of plausibility. *See Connick*, 68 ("[F]ailure-to-train liability is concerned with the substance of the training, not the particular instructional format.").

Defendants' motion to dismiss the § 1983 claim against the County for failure to train or supervise its K-9 units is **GRANTED**.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. The motion to dismiss all claims against Lt. Buttler is **GRANTED**. The motion to dismiss the § 1983 claim against the County,

to the extent such claim is based on a failure to train or supervise, is also

**GRANTED**. The motion to dismiss the § 1983 claim against the County, to the

extent such claim is based on County policy, is **DENIED**.


      **IT IS SO ORDERED.**


                  /s/ Sarah D. Morrison          
                  **SARAH D. MORRISON**
                  **UNITED STATES DISTRICT JUDGE**